UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NYKA O'CONNOR,

        Plaintiff,

v.                                   Case No. 3:18-cv-1423-J-39PDB

JULIE JONES et al.,

        Defendants.

_____

## ORDER

### I. Status & Procedural History

Plaintiff, Nyka O'Connor, an inmate of the Florida Department of Corrections (FDOC) is proceeding pro se on an amended civil rights complaint against twelve Defendants, based on incidents that occurred at Florida State Prison (FSP) (Doc. 89; Am. Compl.).[1]

Plaintiff initiated this action on April 12, 2017, in the United States District Court for the Southern District of Florida (Doc. 1). The Southern District dismissed the case with prejudice under 28 U.S.C. § 1915(g) because Plaintiff is a three-strikes litigant. See Orders (Docs. 11, 15). Plaintiff appealed (Doc. 21). The Eleventh Circuit reversed and remanded, holding Plaintiff

_____

[1] Plaintiff is no longer housed at FSP.

alleged facts showing he was in "imminent danger" as to his gastrointestinal problems (Doc. 32; Eleventh Circuit Order).[2] On remand, the Southern District substantively screened Plaintiff's complaint and found Plaintiff failed to state a claim against some defendants. <u>See</u> Order (Doc. 42). Recognizing the only remaining claims related to conduct that occurred at FSP, the Southern District transferred the case here and ordered Plaintiff to file an amended complaint. <u>See</u> Order (Doc. 42).

When Plaintiff finally submitted an amended complaint in this Court, (Doc. 57), the Court struck it for Plaintiff's failure to comply with a Court order (Doc. 48) and federal pleading standards. Specifically, the Court noted Plaintiff's first amended complaint contained 657 paragraphs and seventy-seven pages of allegations, with over 400 pages of exhibits. <u>See</u> Order (Doc. 58). Since that time, the Court has directed Plaintiff numerous times to submit a complaint in compliance with federal pleading standards. <u>See</u> Orders (Docs. 58, 63, 67, 71, 79). Additionally, the Court instructed Plaintiff he may proceed only on claims related to inadequate medical care or diet for his

---

[2] The Eleventh Circuit noted Plaintiff complained of inadequate medical care for at least nine different ailments. However, the Court held, "[Plaintiff's] claims regarding his gastrointestinal problems, and the prison personnel's handling of those problems, satisfy the imminent danger standard." <u>See</u> Eleventh Circuit Order at 9.

gastrointestinal issues and should pursue unrelated claims in a separate action. <u>See</u> Orders (Docs. 71, 79).

The Court denied Plaintiff's motion for injunctive relief on March 26, 2019. <u>See</u> Order (Doc. 58). Plaintiff appealed that ruling. <u>See</u> Notice of Interlocutory Appeal (Doc. 60). His appeal remains pending. <u>See</u> <u>O'Connor v. Julie Jones, et al.</u>, Case No. 20-11456.[3]

All served Defendants now move to dismiss Plaintiff's amended complaint (Docs. 132, 134, 141, 146, 158).[4] Plaintiff has responded to the motions (Docs. 142, 161, 162, 163).

## II. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>see also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence"

---

[3] Plaintiff's reply brief was due January 4, 2021.

[4] Service was returned unexecuted on Defendant S. Johnson, who no longer works for FSP. <u>See</u> Return of Service (Doc. 116).

supporting the plaintiff's claims. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007).

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678. As such, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Gill as Next Friend of K.C.R. v. Judd</u>, 941 F.3d 504, 511 (11th Cir. 2019) (quoting <u>Iqbal</u>, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. In assessing the sufficiency of a complaint, all reasonable inferences should be drawn in favor of the plaintiff. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

### III. Amended Complaint

While Plaintiff's allegations are much condensed from those in his initial and first amended complaints, they remain somewhat confusing and vague. Accordingly, the Court will summarize Plaintiff's claims here but will address his factual allegations when analyzing the individual motions under review.

Plaintiff purports to state the following claims: (1) deliberate indifference to serious medical needs in violation of the Eighth Amendment and Florida Constitution against the current and former Secretaries of the FDOC, Mark Inch, Julie Jones, and Michael Crews; former Wardens of FSP, John Palmer

and Barry Reddish; and Defendants Espino, Le, Johnson, Singletary, and McCoy; (2) discrimination and a failure to accommodate disabilities under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) against current and former Secretaries Inch, Jones, and Crews, and former Wardens Palmer and Reddish; (3) denial of the free exercise of religion in violation of the First Amendment, the Florida Constitution, and the Religious Land Use and Institutionalized Persons Act (RLUIPA) against current and former Secretaries Inch, Jones, and Crews; former Wardens Palmer and Reddish; and Defendants Espino, Le, Graham, and Cohens; and (4) deliberate indifference to "basic life need for adequate" sanitary meals in violation of the Eighth Amendment and the Florida Constitution against current and former Secretaries Inch, Jones, and Crews; former Wardens Palmer and Reddish; and Defendants Graham and Cohens. <u>See</u> Am. Compl. at 3-4.[5] Plaintiff sues all Defendants in their individual and official capacities. <u>Id.</u> at 11.

---

[5] As to all claims, Plaintiff also vaguely asserts that Defendants' conduct constitutes a breach of contract under federal common laws and Florida contract laws. <u>See</u> Am. Compl. at 3-4. Plaintiff's conclusory allegations that Defendants' conduct amounts to a breach of contract fails to state a claim for relief. To the extent Plaintiff is referring to the FDOC's general duty to provide constitutionally adequate housing and medical care for inmates, any alleged violations of those duties give rise to claims under the Eighth Amendment.

## IV. Analysis & Conclusions

### A. Defendant Le's Motion

In his motion to dismiss (Doc. 132; Le Motion), Defendant Le seeks dismissal on only one ground: that Plaintiff "should not be allowed to proceed" in forma pauperis (IFP) because he is a three-strikes litigant. <u>See</u> Le Motion at 2, 4. This argument has been foreclosed by the Eleventh Circuit. <u>See</u> Eleventh Circuit Order at 8 (holding Plaintiff's claims regarding his gastrointestinal issues satisfy the "imminent danger" exception to the three-strikes rule). Accordingly, Defendant Le's motion is due to be denied, and Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Le will proceed.[6]

### B. Defendants Espino and Singletary's Motion

In their joint motion (Doc. 141; Espino Motion), Defendants Dr. Espino and Nurse Singletary argue, among other things, that Plaintiff fails to state a claim against them, and they are entitled to qualified immunity. <u>See</u> Espino Motion at 7-8, 9. As to the latter argument, according to the FDOC's notice regarding service of process (Doc. 101), Dr. Espino and Nurse Singletary were not FSP employees at the relevant times but were "employees of the contracted

---

[6] Plaintiff alleges Defendant Dr. Le denied Plaintiff's multiple requests for a therapeutic diet to address his low weight. <u>See</u> Am. Compl. at 18. Plaintiff also alleges Dr. Le falsified documents to deny him necessary treatment. <u>Id.</u> Finally, Plaintiff alleges he "needed gastro meds," an ultrasound, and other treatment, but he did not receive it. <u>Id.</u>

medical provider." Accordingly, they may not invoke qualified immunity. <u>See, e.g.</u>, <u>Richardson v. McKnight</u>, 521 U.S. 399, 412 (1997) (holding private prison guards "do not enjoy qualified immunity from suit in a § 1983 case"). <u>See also</u> <u>Hinson v. Edmond</u>, 205 F.3d 1264, 1265 (11th Cir. 2000) ("[A] privately employed prison physician[] is ineligible to advance the defense of qualified immunity."). The Court will now address whether Plaintiff states a deliberate indifference claim against Dr. Espino or Nurse Singletary in their individual capacities.[7]

A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To state a claim, a plaintiff first must allege he had a serious medical need. <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004). Next, the plaintiff must "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." <u>Richardson v. Johnson</u>, 598 F.3d 734, 737 (11th Cir. 2010). "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." <u>Hamm v. DeKalb Cty.</u>, 774 F.2d 1567, 1575 (11th Cir.

---

[7] In his response to Dr. Espino and Nurse Singletary's motion (Doc. 162; Espino Resp.), Plaintiff contends he does not pursue claims against them in their official capacities. <u>See</u> Espino Resp. at 7.

1985) (quoting with alteration <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (1st Cir. 1981)). As such, allegations of medical negligence are not cognizable under § 1983. <u>Estelle</u>, 429 U.S. at 106.

When a prisoner has received medical treatment, to allege an Eighth Amendment violation, he must assert facts showing the care he received was "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991). Alleging a "simple difference in medical opinion" does not state a deliberate indifference claim. <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 2007).

### i. Dr. Espino

Plaintiff alleges Dr. Espino was deliberately indifferent to his medical needs at a call-out on October 1, 2013, because Dr. Espino simply asked "[Plaintiff] what [his] 2010 surgery was for, briefly listened to [Plaintiff's] stomach with his stethoscope, then yelled at [Plaintiff] to get out of his office." <u>See</u> Am. Compl. at 13. Plaintiff also alleges Dr. Espino prescribed "nothing," and disregarded his other medical issues because Plaintiff improperly grieved more than one medical problem in his September 29, 2013 sick-call request. <u>Id.</u> at 12, 13.

These allegations do not suggest deliberate indifference. Accepting Plaintiff's allegations as true and assuming Plaintiff's gastrointestinal

problems constitute a serious medical need, Plaintiff alleges at most dissatisfaction with Dr. Espino's medical evaluation and decision not to prescribe medications, which "sound[s] in tort law." See Hamm, 447 F.2d at 1575. Plaintiff does not allege that Dr. Espino ignored an obvious immediate need for treatment. In fact, Plaintiff alleges that Dr. Espino physically assessed him on October 1, 2013, for complaints of gastro pain. See Am. Compl. at 12, 13.

Accepting as true that Dr. Espino refused to evaluate and treat the other medical issues of which Plaintiff complained on October 1, 2013, Plaintiff himself says that Dr. Espino did so under a FDOC policy, which suggests Dr. Espino's conduct was motivated by objective factors, not a subjective disregard for Plaintiff's health. The chapter of the Florida Administrative Code that addresses prison grievances, including those of a medical nature, provides a list of reasons a grievance will be returned to an inmate "without a response on the merits": one of those reasons is "address[ing] more than one issue or complaint." See Fla. Admin. Code r. 33-103.014(1)(a). An inmate whose grievance is returned without action for addressing more than one complaint may "correct the stated deficiency" by refiling the grievance in compliance with applicable rules. See Fla. Admin. Code r. 33-103.014(2). Plaintiff does not allege he corrected the deficiency by later submitting a proper sick-call request. See Am. Compl. at 13.

9

In short, Plaintiff alleges no facts permitting the reasonable inference that Dr. Espino's care was "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris, 941 F.2d at 1505. Finally, accepting as true that Dr. Espino was rude or hostile toward Plaintiff, such conduct does not offend Eighth Amendment principles. See McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983). Indeed, a claim that a prison official was mean to a prisoner is frivolous.

For these reasons, Plaintiff fails to state a plausible claim against Dr. Espino, and Dr. Espino is due to be dismissed from this action.

### ii. Nurse Singletary

Plaintiff alleges he "attempted to provide Nurse Singletary a sick-call" request on December 25, 2013, but Nurse Singletary refused to accept it because Plaintiff attempted to grieve more than one issue. See Am. Compl. at 17. With his response Dr. Espino and Nurse Singletary's motion, Plaintiff provides grievance records as an exhibit (Doc. 162-1; Pl. Ex. 1). On December 25, 2013, Plaintiff submitted three grievances: an "inmate request" to the mental health department, a grievance to the Warden, and a sick-call request to the mental health department. See Pl. Ex. 1 at 1, 2, 4. In his grievance to the Warden and sick-call request to the mental health department, Plaintiff complained about the cold weather, lack of hot water and heat, inadequate bedding, and problems closing his window. Id. at 1, 2. He also requested

10

another pillow so he could keep his head raised above his stomach to prevent acid reflux. Id. In the inmate request, also submitted to the mental health department, Plaintiff complained that Nurse Singletary would not accept his sick-call request at his cell front. Id. at 4. A senior mental health clinician responded to Plaintiff's inmate request as follows:

> I answered this via your formal grievance. You have refused 4 groups, 2 psychiatric call-outs, and 1 call-out with me during the month of December. We cannot treat your [mental health] issues unless you attend call-outs. You are scheduled to see Dr. Rumbaua very soon and I'd urge you to attend. Your non-[mental health] issues (blankets, temp) should be addressed with security.

Id.

Even if Nurse Singletary refused to accept Plaintiff's sick-call request because Plaintiff grieved more than one issue or complaint in violation of FDOC policy, her state of mind cannot be characterized as one of deliberate indifference. Additionally, accepting that Nurse Singletary was obligated by prison rule to collect Plaintiff's facially deficient sick-call request at his cell front, the violation of a prison rule does not translate into a constitutional violation. See, e.g., Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002). Finally, given Plaintiff submitted three grievances on the day he alleges Nurse Singletary would not accept his sick-call request by hand and given Plaintiff ultimately received a substantive response to his sick-call request, he fails to

11

allege facts showing a causal connection between Nurse Singletary's conduct and any alleged harm he suffered because of her conduct.[8]

In sum, Plaintiff fails to allege facts permitting the inference that Nurse Singletary was deliberately indifferent to his serious medical needs. Because Plaintiff fails to state a plausible deliberate indifference claim against both Dr. Espino and Nurse Singletary, their motion is due to be granted to that extent.

## C. Remaining Motions

The remaining Defendants have submitted nearly identical motions. Defendants Inch, Jones, Crews, Palmer, and Reddish (Supervisory Defendants) jointly move to dismiss the claims against them (Doc. 134; FDOC Motion). Defendants Graham and McCoy jointly move to dismiss the claims against them (Doc. 146; Graham Motion). Finally, Defendant Cohens moves for dismissal as well (Doc. 158; Cohens Motion).

In all motions, Defendants invoke Eleventh Amendment and qualified immunities and argue Plaintiff fails to state a claim under the ADA, RA, RLUIPA, the Eighth Amendment, and for breach of contract.[9] They further

---

[8] Nurse Singletary also argues Plaintiff's claims against her are barred by the statute of limitations because Plaintiff did not raise claims against her in his initial complaint. See Espino Motion at 5-6. In response, Plaintiff says he made allegations against Nurse Singletary in his initial complaint. See Espino Resp. at 1, 2. Because the Court finds Plaintiff fails to state a claim against Nurse Singletary, the Court declines to rule on the timeliness issue.

[9] The Court addressed the breach of contract claims earlier in this Order.

assert Plaintiff's IFP status should be revoked or, in the alternative, his unrelated claims should be dismissed for improper joinder. Finally, they move to dismiss Plaintiff's claims for injunctive and declaratory relief because he is no longer housed at FSP.

In his responses (Docs. 161, 162; FDOC & Graham Resp., Cohens Resp.),[10] Plaintiff clarifies that he advances a RLUIPA claim against solely the FDOC Secretaries and FSP Wardens in their official capacities. See FDOC & Graham Resp. at 4; Cohens Resp. at 2. He does not pursue such a claim against Defendants Graham, McCoy, or Cohens. Additionally, Plaintiff maintains he does not sue Defendants in their official capacities for damages, mooting the Eleventh Amendment immunity argument. See FDOC & Graham Resp. at 12; Cohens Resp. at 6.

### i. Three Strikes Bar

Defendants' suggestion that the Court should revoke Plaintiff's IFP status is meritless. The Eleventh Circuit found Plaintiff's allegations in his original complaint were sufficient to invoke the imminent danger exception

---

[10] Plaintiff jointly responds to the Supervisory Defendants' motion and Defendant Graham and McCoy's motion. Plaintiff contends Defendants' separate motions were not timely filed and, thus, should be denied. See FDOC & Graham Resp. at 3; Cohens Resp. at 2. Plaintiff's objection on the basis of timeliness has no merit. The Court issued separate orders accepting Defendants' motions as timely filed. See Orders (Docs. 135, 148, 160).

under 28 U.S.C. § 1915(g). See O'Connor v. Backman, 743 F. App'x 373, 376 (11th Cir. 2018). The "imminent danger" inquiry is made when a plaintiff initiates an action. See Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (holding the statute's use of present tense refers to the time when the plaintiff files the complaint). When Plaintiff initiated the action, he was at FSP, and the Eleventh Circuit held he alleged facts showing he was imminent danger at that time. Plaintiff's later transfer does not impact that analysis. See Smith v. Dewberry, 741 F. App'x 683, 687 (11th Cir. 2018) (noting the plaintiff's later transfer did not affect the imminent danger analysis, which was made at the time the complaint was filed). Thus, the Court may not now revoke Plaintiff's IFP status.

## ii. Improper Joinder

Plaintiff still has failed to comply with the Court's Orders and the Federal Rules of Civil Procedure insofar as he raises multiple, unrelated claims in his amended complaint. Plaintiff alleges FSP staff members did not adequately assess or treat numerous medical conditions as far back as 2013 and as recent as 2017. See Am. Compl. at 12, 19. For instance, Plaintiff alleges different Defendants, at different times, failed to adequately treat the following medical conditions: uncontrolled weight loss and low weight, for which Plaintiff requested a 4000-calorie diet; severe gastrointestinal issues, for which Plaintiff requested a "non-standard therapeutic diet"; ankle pain, for

which Plaintiff requested medical shoes; blurry vision and other eye issues, for which Plaintiff requested eye glasses and referral to an optician; shoulder injuries and nerve damage, for which Plaintiff requested a no-lifting pass, looser restraints, and an MRI; stress and anxiety, for which Plaintiff requested medications; eczema and other skin issues, for which Plaintiff requested moisturizer; migraines and headaches, for which Plaintiff requested an MRI; and missing teeth, for which Plaintiff requested implants. Id. at 12-19.

Not only has Plaintiff failed to comply with the Court's directives to set forth only related claims, but the Federal Rules of Civil Procedure prohibit the improper joinder of defendants in one action if the claims do not arise out of "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20 (2)(A). See also Smith v. Owens, 625 F. App'x 924, 928 (11th Cir. 2015) (affirming dismissal of the plaintiff's claims against corrections officers because those claims arose out of different events that occurred on different dates); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [the] 50–claim, 24–defendant suit produced but also to ensure that prisoners pay the required filing fees.").

It appears Plaintiff attempts to demonstrate his multiple claims of inadequate medical care are related by repeating the mantra that the Supervisory Defendants were the driving force behind the multiple, alleged

15

abuses because they maintained "widespread [and] persistent polic[ies], practice[s] [and] custom[s]." See Am. Compl. at 12-19. Such conclusory, rote allegations fail to demonstrate the various claims Plaintiff seeks to pursue against different individuals arise out of the same transaction or occurrence or series of transactions or occurrences.

Because Plaintiff alleges multiple, unrelated claims, the claims not related to those for which Plaintiff was granted IFP status under the imminent danger exception will be dismissed. In particular, the following claims are subject to dismissal: deliberate indifference to serious medical needs for all medical conditions except the gastrointestinal issues; free exercise of religion under RLUIPA, the First Amendment, and the Florida Constitution; and discrimination under the ADA and RA based on disabilities other than an alleged gastro-related disability.

As to the free-exercise-of-religion claims under RLUIPA, the First Amendment, and the Florida Constitution, those are wholly unrelated to Plaintiff's gastrointestinal issues and requested medical care or dietary restrictions for those issues. Plaintiff seemingly attempts to show a connection between his medical issues and the religion claims by alleging he requested a special diet between 2013 and 2017 to satisfy both his "health and religious belief system." Id. at 21. Whether Plaintiff's religious beliefs would entitle him to a special diet is a different legal inquiry from whether his gastrointestinal

issues also would warrant a special diet. In other words, even if a doctor were to prescribe the same diet for Plaintiff's gastrointestinal issues that a chaplain would approve as a religious accommodation, Plaintiff's deliberate indifference claims against medical providers and supervisors are distinct from the religion claims against the FDOC or individual FSP employees.

As to the discrimination or accommodation claims under the ADA and RA, to the extent they are based on medical conditions other than the gastrointestinal issues, they too are unrelated and should be pursued in a different action to the extent cognizable.

With the unrelated claims subject to dismissal, that leaves the following claims for the Court's review: discrimination or a failure to accommodate gastro-related disabilities against the Supervisory Defendants; deliberate indifference to serious medical needs against the Supervisory Defendants and Defendant McCoy; and deliberate indifference to health and safety against the Supervisory Defendants and Defendants Graham and Cohens. Id. at 3-4.

### iii. ADA & RA Claims Against Supervisory Defendants

Title II of the ADA, which applies to state prisons, provides as follows: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. See also Pennsylvania Dep't of Corr. v.

Yeskey, 524 U.S. 206, 213 (1998) (holding Title II of the ADA "unambiguously extends to state prison inmates"). Similarly, section 504 of the RA provides, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." Badillo v. Thorpe, 158 F. App'x 208, 214 (11th Cir. 2005) (citing Cash v. Smith, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000)); J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ., 877 F.3d 979, 985 (11th Cir. 2017) ("Discrimination claims under the ADA and the [RA] are governed by the same standards, and the two claims are generally discussed together."). To state a claim of discrimination under the ADA and RA, a plaintiff must allege "(1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." Owens v.

Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 477 (11th Cir. 2015) (quoting Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007)).[11]

Assuming Plaintiff is a qualified individual with a disability, Plaintiff wholly fails to identify any program or service to which he was denied access because of his gastrointestinal issues. See Am. Compl. at 19-20. Rather, Plaintiff premises his ADA and RA claims on a perceived lack of or denial of appropriate medical intervention for those issues. Id. at 20. The ADA and RA were not intended to subsume medical malpractice claims, meaning allegations that a defendant failed to provide medical care to a disabled inmate does not give rise to claims under the ADA or RA. See Jones v. Rutherford, 546 F. App'x 808, 811-12 (11th Cir. 2013); Finn v. Haddock, 459 F. App'x 833, 837-38 (11th Cir. 2012) (stating that "failure to provide adequate medical treatment . . . does not violate the ADA or [RA]" (citations omitted)).

In his joint response to the Supervisory Defendants' and Defendants Graham and McCoy's motions, Plaintiff cites a decision from the United States District Court for the Southern District of California for the proposition that a prison's failure to accommodate an inmate's medically necessary dietary needs

---

[11] Only public entities may be liable under the ADA and RA. Acknowledging a much, Plaintiff clarifies that his ADA and RA claims are against the Supervisory Defendants solely in their official capacities. See FDOC & Graham Resp. at 4.

gives rise to a plausible claim under the ADA. <u>See</u> FDOC & Graham Resp. at 5 (citing <u>Scott v. Garcia</u>, 370 F. Supp. 2d 1056, 1075 (S.D. Cal. 2005)). In <u>Scott</u>, the court held the plaintiff demonstrated a genuine issue of material fact as to whether the defendant failed to accommodate his dietary needs to address his "stomach and digestive problems." <u>See</u> 370 F. Supp. 2d at 1058, 1075.

Not only is the <u>Scott</u> decision not binding on this Court, but the facts are materially distinguishable. In <u>Scott</u>, a prison doctor diagnosed multiple gastro-related conditions, ordered the plaintiff to avoid fatty and spicy foods, and recommended that the plaintiff be transferred to a prison with a hospital. <u>Id.</u> at 1059. Despite additional orders from the doctor recommending that the plaintiff be transferred "immediately," the plaintiff was not transferred for five months. <u>Id.</u> at 1060-61. Moreover, the evidence showed that, contrary to doctor's orders, prison officials did not accommodate the plaintiff's eating schedule or meal restrictions "to prevent illness following his surgery," and the ordering physician refused to intervene to ensure his orders were followed "on the yard." <u>Id.</u> at 1075.

Unlike the plaintiff in <u>Scott</u>, Plaintiff here does not allege prison officials ignored doctors' orders that he be provided special meals at designated times. On the contrary, Plaintiff complains FSP doctors would not authorize or prescribe a special diet for his "gastro issues of inability to digest certain carbohydrates." <u>See</u> Am. Compl. at 12, 13. In other words, unlike in <u>Scott</u>, there

20

could not have been a failure to accommodate special instructions because no doctor ordered that Plaintiff's meal schedules or dietary needs be different from those of other inmates. Accordingly, Plaintiff's allegations more squarely sound in a claim for a denial of adequate medical care under the Eighth Amendment rather than for a failure to accommodate. Thus, Plaintiff's ADA and RA claims against the Supervisory Defendants are due to be dismissed.

### iv. Deliberate Indifference Claims: Qualified Immunity

Defendants invoke qualified immunity as to the § 1983 claims against them in their individual capacities. An official sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows government employees to exercise their official duties without fear of facing personal liability. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id. In other words, "[q]ualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." Taylor v. Riojas, 141 S. Ct. 52, 53 (2020) (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)).

Upon invoking qualified immunity, a defendant bears the initial burden to demonstrate he was acting within his discretionary authority at the relevant times. Id. Defendants carry their burden. Plaintiff sues the Supervisory Defendants and Defendants Graham, McCoy, and Cohens for acts or omissions that occurred while they were acting in their roles as FDOC officials or FSP employees. As such, the burden shifts to Plaintiff, who must point to facts that, accepted as true, demonstrate Defendants violated a constitutional right that was "clearly established" at the time of the alleged violation. Id. "Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." Alcocer, 906 F.3d at 951 (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam)).

### a. Supervisory Defendants

Plaintiff makes the same rote allegations against the Supervisory Defendants, without addressing each Defendant individually. Plaintiff alleges the FDOC Secretaries and FSP Wardens "had a subjective knowledge of serious harm, but disregarded said risk by their conduct[] that [was] more than gross negligence." See Am. Compl. at 13, 14, 15, 18. Plaintiff provides no facts explaining how the Supervisory Defendants had subjective knowledge that he had a serious medical condition that was not being adequately addressed or

22

otherwise was at risk of harm. Plaintiff's conclusory allegations are insufficient to demonstrate the Supervisory Defendants personally participated in alleged unconstitutional conduct.

Additionally, to the extent Plaintiff suggests the Supervisory Defendants had the requisite knowledge because he submitted grievances, his claims fail. See Jones v. Eckloff, No. 2:12-CV-375-FTM-29DN, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." (citing Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009))).

Absent allegations showing the Supervisory Defendants personally participated in alleged constitutional violations, Plaintiff's claims against them are based on a theory of respondeat superior. However, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable . . . for the actions of a subordinate is extremely rigorous." Id. Absent personal participation, supervisor liability arises only "when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v.

23

Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotation marks and citation omitted).

> The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Alternatively, the causal connection may be established when a supervisor's "custom or policy ... result[s] in deliberate indifference to constitutional rights" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

Cottone, 326 F.3d at 1360 (internal citations omitted).

When a plaintiff premises a claim for supervisory liability on a policy or custom, the plaintiff must do more than mention those terms in a conclusory manner. See Rankin v. Bd. of Regents of the Univ. Sys. of Ga., 732 F. App'x 779, 783 (11th Cir. 2018). Instead, a plaintiff must allege facts "show[ing] a persistent and wide-spread practice." Goebert v. Lee Cty., 510 F.3d 1312, 1332 (11th Cir. 2007) (quoting Depew v. City of St. Mary's, Ga., 787 F.2d 1496, 1499 (11th Cir. 1986)). "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees." Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1311 (11th Cir. 2011). See also Rankin, 732 F. App'x at 783 (reasoning that the "claim [against the supervisor] fail[ed] because most of the allegations supporting it [were] conclusory, and to the

extent some [were] based on facts, they [were] limited to [the plaintiff's] own experience").

Plaintiff attempts to demonstrate a causal connection between alleged constitutional violations and the Supervisory Defendants' conduct by asserting these Defendants adopted policies or customs to permit the underlying violations of which he complains. As relevant to his gastrointestinal issues and concomitant dietary and medical needs, Plaintiff alleges the Supervisory Defendants "[had] a known widespread [and] persistent policy, practice [and] custom" (1) of permitting or condoning the FSP intake nurses to "falsify new arrival inmates' weight" so the inmates will not qualify for a 4000-calorie diet;[12] (2) of permitting or condoning nurses to "conduct inadequate cellfront [sic] assessments" and denying adequate medical care for close-management inmates "as punishment"; (3) of limiting inmates to one issue when submitting requests for medical care or appointments; (4) of denying non-standard therapeutic diets to close-management inmates who are "eligible for same"; (5) of serving meals "in dirty filthy plastic trays, cups, utensils, [and] containers";

---

[12] It is unclear whether Plaintiff's alleged weight loss and request for a 4000-calorie diet is related to his gastrointestinal issues.

and (6) of serving Plaintiff cold meals, which are difficult for him to digest and, as a result, agitate his gastro issues. See Am. Compl. at 12-14, 17-19, 21.[13]

The only reference Plaintiff makes to an official, adopted policy is the one that limits inmates to one issue or complaint per grievance or sick-call request. The source of this policy is the Florida Administrative Code, which provides that an inmate's grievance may be returned to him without action when "[t]he grievance addresses more than one issue or complaint." See Fla. Admin. Code r. 33-103.014(1)(a). An inmate whose grievance is returned under this provision may "correct the stated deficiency" by refiling the grievance in compliance with applicable rules. See Fla. Admin. Code r. 33-103.014(2). Aside from a conclusory assertion, Plaintiff provides no facts permitting the inference that this policy results in deliberate indifference to the constitutional rights of inmates. Importantly, the policy does not bar inmates from receiving medical care—it merely requires that they request medical care in a particular way. Plaintiff is clearly aware of the rule and has chosen, at times, not to follow it. His unilateral decision to flout the rules does not mean those rules result in

---

[13] Plaintiff references multiple other alleged policies or customs, but those are not related to medical care or dietary needs for his gastro issues or are based on underlying incidents that fail to state a deliberate indifference claim against the subordinate staff members allegedly involved. For example, Plaintiff complains about tight restraints, small holding cells, being forced to carry heavy items, being threatened or intimidated by staff, being denied tooth implants, and being denied religious items. See Am. Compl. at 15, 17, 19.

deliberate indifference to his needs or the needs of other inmates. Plaintiff does not allege any properly submitted grievances or sick-call requests were flagrantly ignored with a conscious disregard of his health or safety, and that any such instances were the result of an official policy or custom.

As to the other alleged customs or policies, Plaintiff's sparse supporting factual allegations do not permit the inference that the negative encounters he had with medical providers or food service employees were representative of a persistent and widespread problem at FSP. Plaintiff alleges that, on September 26, 2013, the intake nurse "falsified his weight" so that he would not qualify to receive a 4000-calorie diet; on September 30, 2019,[14] "a sick-call nurse did an inadequate assessment . . . for [close-management] inmates . . . then walked away, denying adequate care, [and] providing nothing"; on December 28, 2016, an intake nurse denied Plaintiff's request for a non-standard therapeutic diet to address his low weight and gastro issues; he was served food on unsanitary trays with unsanitary utensils; and he was served cold food. See Am. Compl. at 12, 17-18, 21.

Accepting as true that nurses falsified Plaintiff's weight, denied his request for a non-standard therapeutic diet, or conducted medical assessments that Plaintiff subjectively perceived to be inadequate, and that Plaintiff

---

[14] Plaintiff likely meant to write "2013" as the year, not 2019.

received cold meals on dirty trays, Plaintiff's personal experiences and observations are not enough to allege the existence of a policy or custom. See Craig, 643 F.3d at 1311; Rankin, 732 F. App'x at 783. Plaintiff references no other instances of the alleged policies or customs resulting in constitutional violations. For instance, Plaintiff does not allege that the offending conduct routinely happened or that supervising officials ordered, condoned, or were knowledgeable about such conduct.

Plaintiff's conclusory assertions amount to no more than a "formulaic recitation" of the elements necessary to assert a claim on the basis of supervisory liability. See Iqbal, 556 U.S. at 681. Such allegations are insufficient to meet the rigorous standard to hold the Supervisory Defendants liable for the alleged conduct of their subordinates. See Hendrix v. Tucker, 535 F. App'x 803, 805 (11th Cir. 2013) (affirming dismissal of the plaintiff's claims against supervisors because his allegations of a "long standing policy, practice, and custom" of discriminating against inmates with respect to gain time were "vague and conclusory"); Harvey v. City of Stuart, 296 F. App'x 824, 826 (11th Cir. 2008) (per curiam) (affirming dismissal of a § 1983 action against a municipality because the plaintiff "failed to identify any policy or custom that caused a constitutional violation, and his vague and conclusory allegations were insufficient to support the complaint"). See also O'Donnell v. Bd. of Trustees, No. 5:15-CV-389-CAR, 2016 WL 3633348, at *8 (M.D. Ga. June 29,

2016) (finding the plaintiff's allegation that supervisory defendants had a "policy and custom on the use of physical punishment" was conclusory because it was based only on the single incident the plaintiff described in her complaint).

For the above reasons, the Supervisory Defendants' motion is due to be granted to the extent Plaintiff fails to state a plausible claim for relief against them on a theory of respondeat superior. Given Plaintiff fails to state a claim against the Supervisory Defendants and because he is no longer housed at FSP, his requests for declaratory and injunctive relief are moot and subject to dismissal. See Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (holding the plaintiff's requests for injunctive and declaratory relief relating to conditions of his confinement at the institution where he was housed when he filed his complaint were moot because he had since been transferred to a different institution). See also Owens v. Centurion Med., 778 F. App'x 754, 759 (11th Cir. 2019) (holding the "effects of the alleged deprivations at [one prison] ha[d] been completely and irrevocably eradicated" once the plaintiff was transferred to a different prison).

### b. Defendants Graham, McCoy & Cohens

Plaintiff alleges Defendant McCoy was deliberately indifferent to his serious medical needs, and Defendants Graham and Cohens were deliberately

indifferent to his need for adequate meals and sanitary utensils. <u>See</u> Am. Compl. at 3, 4.

### 1. Defendant McCoy

Plaintiff explains he was scheduled to see an eye doctor at the Reception and Medical Center (RMC) on December 13, 2013, and Defendant McCoy, an officer, was assigned to escort him to the medical unit. <u>Id.</u> at 16. Plaintiff refused to attend the appointment at RMC, however, because Defendant McCoy tightened his restraints too much, "placing unnecessary pain [and] pressure on [his] shoulders [and] gastro area." <u>Id.</u> Though he voluntarily refused to attend his RMC appointment, Plaintiff declined to sign a written refusal form. <u>Id.</u>

Plaintiff alleges Defendant McCoy would not return him to his cell but rather "forced [Plaintiff] to go to medical," where McCoy, Nurse Johnson, and "company" threatened and intimated him into signing a medical refusal form. <u>Id.</u> Plaintiff contends Nurse Johnson used profane language and approached him with "clenched fists," demanding that Plaintiff sign the refusal form. And Defendant McCoy "cracked [his] knuckles to intimidate [Plaintiff]." <u>Id.</u> Plaintiff contends Defendant McCoy was "deliberately indifferent by denying [Plaintiff] adequate restraints, forcing [Plaintiff] to go to medical to sign the refusal despite [Plaintiff's] protest, [and] intimidating [Plaintiff] by cracking his knuckles." <u>Id.</u>

Even if this claim liberally can be construed as related to Plaintiff's gastrointestinal issues, Plaintiff's allegations simply do not permit the reasonable inference that Defendant McCoy acted with a state of mind of deliberate indifference. As Plaintiff himself acknowledges, Defendant McCoy was an officer, not a medical provider. Plaintiff alleges Defendant McCoy was prepared to take Plaintiff to his medical appointment, but Plaintiff voluntarily refused because he thought the restraints were too tight. Plaintiff does not allege Defendant McCoy knew but consciously disregarded that Plaintiff suffered from various medical conditions that made tight restraints painful or uncomfortable. Nor does Plaintiff allege he had a valid medical pass that he presented to Defendant McCoy and that McCoy refused to honor. See id.

Additionally, assuming Defendant McCoy intimidated or threatened Plaintiff, such conduct does not violate the Eighth Amendment. See McFadden, 713 F.2d at 146 ("[A]s a rule, mere threatening language and gestures . . . do not, even if true, amount to constitutional violations." (internal quotation marks omitted)). Importantly, Plaintiff does not allege Defendant McCoy physically assaulted him. Defendant McCoy's actions and non-verbal communications, which Plaintiff perceived to be threatening, do not violate Eighth Amendment standards. Accordingly, the claims against Defendant McCoy are due to be dismissed.

## 2. Defendants Graham & Cohens

Plaintiff alleges Defendants Graham and Cohens denied his requests for meals "compliant with his . . . health needs," from 2013 to 2017, served him meals on unsanitary trays with unsanitary utensils, which caused him to suffer "gastro viruses," and served him cold food that was "difficult to digest … [and] agitate[d] [his] existing gastro issues." See Am. Compl. at 20, 21.[15] Plaintiff does not allege Defendants Graham or Cohens could have approved a special diet for him, nor does he allege they knew he had gastrointestinal issues that made cold foods difficult for him to digest. In fact, he clarifies in his responses that Defendants Graham and Cohens worked in food service—they were not medical providers or nutritionists. See FDOC & Graham Resp. at 2; Cohens Resp. at 3. Additionally, Plaintiff does not allege a doctor had approved a special diet for him, which Defendants Graham or Cohens refused to honor. Thus, Plaintiff fails to state a claim against Defendants Graham and Cohens for an alleged denial of special meals or for serving him cold food.

As to the remaining allegations, accepting as true that Defendants Graham and Cohens personally served Plaintiff food on unsanitary trays with

---

[15] Plaintiff also alleges Defendant Graham, Cohens, and other Defendants served food that "fail[ed] to comply with USDA My Plate 5-food groups." See Am. Compl. at 20. To the extent Plaintiff contends the FSP menus were nutritionally deficient generally, even if cognizable, such a claim is not related to those proceeding in this case.

unsanitary utensils, Plaintiff states a plausible deliberate indifference claim. Plaintiff alleges Defendants Graham and Cohens served meals in "dirty, filthy plastic trays, cups, utensils, containers (kegs) with black mildew, fungus, dirt, food from prior meals, etc. . . . Some of said above trays, cups, utensils, containers, etc. have human wastes, etc." See Am. Compl. at 21. However difficult to believe, if Defendant Graham and Cohens engaged in such conduct, a risk of serious harm to Plaintiff was obvious.[16]

For the reasons stated, the Supervisory Defendants and Defendant McCoy are entitled to qualified immunity because Plaintiff fails to state a plausible claim for relief against them. However, Defendants Graham and Cohens are not entitled to qualified immunity at this juncture.

### D. Claims Against Defendant Nurse Johnson

After service was returned unexecuted as to Nurse Johnson, the Court directed Plaintiff to show cause why this Defendant should not be dismissed and to provide identifying information to effectuate service of process. See

---

[16] It is unclear whether Plaintiff proceeds against Defendants Graham and Cohens on a theory of respondeat superior or for their personal participation in the alleged conduct. Liberally construing Plaintiff's allegations and considering his responses, the Court interprets Plaintiff to mean that Defendants Graham and Cohens themselves engaged in the alleged conduct, by either directly serving Plaintiff or allowing Plaintiff to be served meals in the manner he describes. To the extent Plaintiff alleges Defendants Graham's and Cohens' conduct was based on a widespread policy or custom, his allegations are conclusory as previously addressed.

Order (Doc. 131). Plaintiff responded (Doc. 136), saying he has no other information on Nurse Johnson, and he is unable to search for this Defendant himself. At this juncture, the Court may independently assess whether Plaintiff states a plausible claim against Nurse Johnson. <u>See</u> 28 U.S.C. § 1915A(b)(1) (providing that a district court may "dismiss [a prisoner's] complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted"). <u>See also</u> 28 U.S.C. § 1915(e)(2)(B).

Plaintiff alleges Nurse Johnson was deliberately indifferent to his serious medical needs by denying his requests for a 4000-calorie diet (to help him gain weight) and a non-standard therapeutic diet. <u>See</u> Am. Compl. at 14. Plaintiff concludes Nurse Johnson lacked the authority to deny his requests. <u>Id.</u> at 14, 15. Rather, according to Plaintiff, Nurse Johnson should have referred his requests to a doctor "authorized to prescribe said diet[s] sought." <u>Id.</u> at 15. Plaintiff also alleges Nurse Johnson used "profane language" against him and intimidated him into signing a medical-refusal form on December 13, 2013. <u>Id.</u> at 16.

Accepting as true that Nurse Johnson should have referred Plaintiff's requests to a doctor, her failure to do so amounts to oversight or negligence; it is not an Eighth Amendment violation. Additionally, use of profane language and threatening gestures do not equate to cruel and unusual punishment or

deliberate indifference. Accordingly, Nurse Johnson is due to be dismissed from this action.

## V. Conclusion

Plaintiff argues a dismissal of any claims would be unfair because, in directing him to amend his complaint, the Court limited him to only ten additional pages and prohibited him from attaching exhibits. <u>See</u> FDOC & Graham Resp. at 3, 6, 11. He also contends his amended complaint "relates back" to his initial complaint and suggests the Court should consider the exhibits he attached to his initial complaint in ruling on Defendants' motions. <u>See</u> FDOC & Graham Resp. at 3, 6, 11; Cohens Resp. at 4.

Generally, an amended complaint supersedes prior iterations of the complaint. <u>See</u> <u>Lowery v. Alabama Power Co.</u>, 483 F.3d 1184, 1219 (11th Cir. 2007) ("[A]n amended complaint supersedes the initial complaint and becomes the operative pleading in the case."). In directing Plaintiff to comply with federal pleading standards, the Court expressly instructed Plaintiff he may not "refer to or incorporate by reference his original or amended complaints or attachments, exhibits, or other documents." <u>See</u> Order (Doc. 79). The Court so limited Plaintiff because his initial complaint, first amended complaint, and proposed second amended complaint contained excessive factual allegations and attachments, making it difficult to discern his claims and the allegations

supporting those claims, and thereby creating a burden for the Court and Defendants.

Moreover, the Court found Plaintiff's proposed second amended complaint deficient because he made no effort to resolve the pleading deficiencies the Court repeatedly and painstakingly explained to him. See Order (Doc. 79). Instead, Plaintiff submitted essentially the same documents and exhaustive allegations but presented them differently to give the appearance of compliance.

Plaintiff may not avoid dismissal by complaining the Court required him to comply with federal pleading standards. In fact, allowing Plaintiff to avoid dismissal for such a reason would completely undermine the Court's previous Orders and contravene federal pleading rules. Also of note, despite the Court's instructions to Plaintiff that he should limit his claims to those that are related, Plaintiff chose to plead multiple, unrelated claims and include irrelevant allegations. While pro se pleadings are held to a less stringent standard, the duty of a court to construe pro se pleadings liberally does not require the court to serve as an attorney for the plaintiff. Freeman v. Sec'y, Dept. of Corr., 679 F. App'x 982, 982 (11th Cir. 2017) (citing GJR Invs., Inc. v. Cty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998)). The Court has afforded Plaintiff more than enough opportunities and guidance to submit a proper complaint, and he has failed to do so, with only few exceptions. Plaintiff's pro

se status does not entitle him to ignore Court orders or excuse his failure to comply with the Federal Rules of Civil Procedure. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a pro se IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

Accordingly, for the reasons articulated in this Order, only the following claims will proceed: deliberate indifference to serious medical needs against Defendant Le in his individual capacity, and deliberate indifference to health or safety against Defendants Graham and Cohens in their individual capacities. All other claims and Defendants will be dismissed.

Accordingly, it is now

**ORDERED:**

1.      Defendant Le's Motion to Dismiss (Doc. 132) is **DENIED**.

2.      Defendants Inch, Jones, Crews, Palmer, and Reddish's Motion to Dismiss (Doc. 134) is **GRANTED** to the extent Plaintiff fails to state a plausible claim for relief against them.

3.      Defendants Espino and Singletary's Motion to Dismiss (Doc. 141) is **GRANTED** to the extent Plaintiff fails to state a deliberate indifference claim against them.

4.      Defendants Graham and McCoy's Motion to Dismiss (Doc. 146) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** to the

extent Defendant McCoy is entitled to qualified immunity for Plaintiff's failure to state a claim against him. The motion is **DENIED** to the extent Plaintiff states a plausible deliberate indifference claim against Defendant Graham as stated in this Order.

5.   Defendant Cohens' Motion to Dismiss (Doc. 158) is **GRANTED in part** and **DENIED in part** as stated in this Order.

6.   Plaintiff's claims against the following Defendants are **dismissed**: Inch, Jones, Crews, Palmer, Reddish, Espino, Singletary, and McCoy.

7.   Upon a <u>sua</u> <u>sponte</u> review under 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B), Plaintiff's claims against Defendant Nurse Johnson are **dismissed without prejudice** for Plaintiff's failure to state a claim against Defendant Johnson.

8.   Defendants Le, Graham, and Cohens must answer Plaintiff's amended complaint within **twenty days** of the date of this Order.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of January 2021.

_Brian J. Davis_
BRIAN J. DAVIS
United States District Judge

Jax-6 1/12
c:
Counsel of Record